O’NIELL, C. J.
 

 (dissenting). The school board, in the ordinance ordering the election, designated a polling place in each of the three voting precincts in the district, namely, Cloutierville, Marco and Chopin.. The plaintiffs alleged in their petition that no election was held in either the Marco precinct or thé Chopin precinct, and that no returns were made from either of those precincts. Answering the allegation, the defendant made a weak denial, and averred that, if no returns were made from those precincts, or if the returns were made improperly, it was a matter of no importance because the total number of votes that might have been cast in those precincts was not enough to have changed the result. On the trial of the case, the defendant did not produce any returns or tally sheets from either of those precincts. The only returns that were produced, as stated in the majority opinion, were the list of those who voted at the Cloutierville precinct rand a compiled statement of the 10 votes that were cast at that precinct, of which there was 1 spoiled ballot. If, as the school board announced in its proclamation, there were 12 votes cast in the election, there must have been only 2 votes cast at one of the precincts from which no returns were made, and no vote at all cast at the other of those precincts, or 1 vote cast at each of' those precincts. I am not convinced that an election was held at all at either precinct. The record discloses that there were 243 registered voters in the district in 1925, and of that number 83 were registered in the Chopin precinct and 100 in the Marco precinct.
 

 The reason why so few votes were cast in the election is that the taxpayers were not given a fair opportunity to register. The law required a new registration to be made in that year, commencing on the 2d day of January, and required the registration office to be closed during the 30 days immediately preceding that or any other election. Section 15 of Act 122 of Extra Session of 1921. The ordinance calling the election was adopted on the 2d of February and was first published on the 5th of February, and the election was held on the 16th of March, 1926. The registrar of voters testified that he obeyéd the law which forbade him to allow any one to register to vote in that election after Saturday, the 13th day of February, 1926; that is to say, during the 30 days immediate
 
 *595
 
 ly preceding the election. The same law— as quoted in the majority opinion — required the registrar of voters to keep his office open every day (excepting Sundays and legal holidays) from 9 a. m. to 1 p. m., and from 2 to 6 p. m., during the 30 days immediately preceding the 30 days during which he was required to keep his office closed. ■ At all other times, according to the statute, the registrar’s office was closed, except on Fridays and Saturdays. As the‘1st day of January was a Friday, and, as the 8th of January, being also a Friday, was a legal holiday, there were only 12 days on which the registration office was opened; that is, on the 2d, 9th, 15th, 16th, 22d, 23d, 29th, and 30th of January and the 5th, 6th, 12th and 13th of February. Only the last 3 of those days were subsequent to the first publication of the notice that an election was to be held on the 16th of March. It was utterly impossible. for many of the 243 registered voters residing in the taxing district — -whose registration was automatically canceled at midnight on the last day of December, 1925, by virtue of section 15 of Act 122 of 1921— to register in time to vote in the election; that is to
 
 Bay,
 
 before 6 o’clock on Saturday afternoon, the 13th of February, 1926, at which time the registration office was forever elosed as to that election'.
 

 The purpose of the provisions of section 15 of the Act 122 of 1921 is to prevent such a mockery and injustice as the election in this instance was. It is said in the majority opinion: “As a practical proposition, we think that this” — meaning the few days’ time in which the 243 voters might have registered — “was sufficient time for the approximately 240 voters in the district to register,” etc. My answer is that it is not our province to say what we think is sufficient time to allow the voters to register. The' Legislature has fixed the time, arbitrarily, at 30 days;' and the officers -whose duty it is to interpret and apply the laws have no right to narrow or extend their construction or meaning. Rev. Oiv. Code, art. 20. The violation of the law in this instance, by the officers ordering the election, was flagrant, because there was no just reason whatever for holding the election so hurriedly, after the cancellation of all registrations throughout the state, that a fair percentage of the taxpayers could not possibly register in time to vote. The tax could not be collected until the end of the year 1926.
 

 It is said in the majortiy opinion that, if we enforce the law which requires the registration office to be kept open during the 30 days immediately preceding the 30 days during which it is required to be closed, before an election, we will require that 60 days’ notice, instead of 30 days’ notice, be given of any special election. That is a mistake. In the parishes in which there is a municipality having a population of 12,000 or more the registration office is open every day, Sundays and legal holidays excepted. In the other parishes the registrar of voters is only required to keep his office open during 2 days in each week, except that, during the 30 days immediately preceding an election, he must keep his office closed, and during the 30 days immediately preceding those 30 days he must keep, his office open every day, Sundays and legal holidays excepted. In any parish in which the registration office has remained open for 30 days, a special election may be held at any time, after 30 days’ publication of the notice thereof. But, in those parishes in which the registration office is kept open only 2 days in each week, a special election cannot be held until the registrar of voters has complied with the law requiring him to keep his office open every day (Sundays and legal holidays excepted) during the 30 days preceding the 30 days in which he is required to keep it closed. It is to those-parishes alone that-the statute is ap-'
 
 *597
 
 plieable. The requirement that the registrar must keep his office open every legal day during 30 days before every election day has no meaning or purpose whatever if it does not apply to those parishes in which he is not required to keep his office open during every legal day throughout the year.
 

 I respectfully dissent from the opinion and decree rendered in this case.